IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARCY BRITTON,

       Plaintiff,

vs.                                                              Case No. 1:19-cv-01113 KWR/JHR

MAYOR TIM KELLER,
DANNY NEVAREZ, and
CITY OF ALBUQUERQUE,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) on Qualified Immunity and Other Grounds, filed on February 26, 2020 **(Doc. 17)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is **GRANTED.**

### BACKGROUND

This case arises out of Defendants' catch and release of feral cats, which Plaintiff alleges has created a feral cat colony on or near her property and diminished her property value. Plaintiff alleges that the City of Albuquerque has maintained a "trap, neuter and release" ("TNR") program of stray feral cats and kittens. Defendant's TNR program traps, sterilizes and vaccinates, and releases stray feral cats and kittens at the place they were trapped. **Doc. 14 at 2.** Plaintiff alleges that the City of Albuquerque pays for and partners with organizations to take and abandon stray feral cats at the location of their original capture or new locations, regardless of whether the

appropriate care or sustenance exists at the location and without regard to impacts to property owners. **Doc. 14 at 3.**

Plaintiff argues that this has resulted in the establishment or growth of feral cat colonies that amount to an extreme nuisance that exposes Plaintiff, her neighbors and children to disease vectors, property damage as a result of cat defecation and urination, and property damage from the feral cats themselves, which has resulted in the diminution of Plaintiff's property values.

Plaintiff alleges that the individual defendants are responsible, because Mayor Keller has directed the TNR program to continue and Director Nevarez orders that the cats continue to be dumped at locations around Albuquerque.

The Amended Complaint **(Doc. 14)** asserts (1) Unlawful Taking under the United States and New Mexico Constitutions (Count I) and (2) Trespass and Nuisance (Count II).

**LEGAL STANDARD**

In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155, 1159 (10th Cir. 2010). "To withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels

and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

## DISCUSSION

### I. No Federal Takings Clause Violation.

Plaintiff alleges that the Defendants violated the Takings clause of the Fifth Amendment, applicable here through the Fourteenth Amendment. Plaintiff asserted an inverse condemnation claim seeking compensation for the alleged diminution in value of her property caused by the presence of feral cats on or near her property. Defendants argue that the operation of the TNR program does not amount to a Takings Clause violation. **Doc. 17 at 8.** The Court agrees.

Defendants are alleged to have exercised their police powers by regulating, *i.e.* catching, neutering, vaccinating, and releasing stray cats, which incidentally affected Plaintiff's property values. In short, Plaintiff fails to state a claim under Takings clause, because any diminution in private property value was incidental to the City of Albuquerque's exercise of its police power, which did not regulate Plaintiff's property. Plaintiff's allegations are more in line with a state tort than Takings claim.

#### A. General Federal Takings Clause Law.

The Fifth Amendment's Takings Clause provides that private property shall not "be taken for public use without just compensation." U.S. Const. amend. V. The purpose of the Takings Clause is to prevent the "Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 123, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

"Takings claims typically come in two forms: per se or regulatory." *Alimanestianu v. United States*, 888 F.3d 1374, 1380 (Fed. Cir. 2018). A *per se* (or "categorical") taking occurs

3

where there is a physical invasion or appropriation of property. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 427, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). Further, a regulation that "denies all economically beneficial or productive use of land" also effects a *per se* or categorical taking. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). With a *per se* taking, the Government has a duty to pay just compensation. *Alimanestianu*, 888 F.3d at 1380.

The Supreme Court has also recognized a taking where a regulatory action does not entirely deprive an owner of property rights but nonetheless goes "too far." Under *Penn Central*, the Court considers "the character of the governmental action," "the extent to which the regulation has interfered with distinct investment-backed expectations," and "[t]he economic impact of the regulation on the claimant." *Penn Cent.*, 438 U.S. at 124, 98 S.Ct. 2646.

Plaintiff seeks compensation for the alleged taking through an inverse condemnation action. "[I]nverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *U.S. v. Clarke*, 445 U.S. 253, 257 (1980) (internal citation and quotation omitted).

### B.   Regulated feral cat colonies are not a government occupation of Plaintiff's property.

Plaintiff argues that the feral cats, released by the City "in the vicinity of the property in question," constitutes a "physical occupation" of her property by the Government. **Doc. 24 at 8.** The Court assumes, as it must, that stray cats formed colonies on her property. **Doc. 24 at 9** ("the City is dumping cats in Plaintiff's neighborhood…"); **Doc. 24 at 8** ("cat dumping has established feral cat colonies like the one residing near, or at times on, Plaintiff's property."). Even so,

4

government-regulated feral cats, like regulated wild animals, are not "instrumentalities of the government whose presence constitutes a [] government occupation of Plaintiffs' property." *Mountain States Legal Foundation v. Hodel,* 799 F.2d 1423 (10th Cir.1986) (en banc) ("Of the courts that have considered whether damage to private property by protected wildlife constitutes a "taking," a clear majority have held that it does not and that the government thus does not owe compensation."), *cited in Bradshaw v. United States*, 47 Fed. Cl. 549, 554 (2000) (government's failure to prevent regulated feral horses from causing damage to ranch, and destroying forage on federal lands on which ranch owners grazed cattle did not constitute a taking); *Alves v. United States*, 133 F.3d 1454, 1457 (Fed. Cir. 1998) (citing with approval *Mountain States* and stating "[u]nder the majority rule enunciated by the Tenth Circuit, the trespass of regulated wildlife does not constitute a regulatory taking.").

These cases generally hold that the government cannot be held liable under the Fifth Amendment Takings Clause for damages or trespass to private property caused by wild or feral animals under the government's regulatory control. *Mountain States Legal Found. v. Hodel*, 799 F.2d 1423, 1428–29 (10th Cir. 1986) (collecting cases). The act at issue in *Mountain States* went even further than here, effectively prohibiting property owners from removing feral horses from their property or stopping them from grazing. *Id.* Therefore, feral cat colonies do not constitute government occupation of her property, and the damage done by trespassing feral cats does not constitute a violation of the Fifth Amendment Takings Clause, as applied through the Fourteenth Amendment.

  **C.**  **Takings Clause and Inverse Condemnation claim fails as a matter of law.**

Alternatively, the Takings Clause claim also fails as a matter of law because (1) the alleged injury was incidental to the Defendants' exercise of their police powers and (2) Defendants did not regulate or take Plaintiff's property for public use.

Initially, the Court notes that the TNR policy was an exercise of the City's police powers to protect public health by regulating feral animals, reducing the stray feral cat population, and reducing the spread of disease in the community.[1]  NMSA 1978, § 3–17–1 (Cum.Supp.1994) ("The governing body of a municipality may adopt ordinances or resolutions not inconsistent with the laws of New Mexico for the purpose of: …providing for the safety, preserving the health, promoting the prosperity and improving the morals, order, comfort and convenience of the municipality and its inhabitants...."), *cited in State ex rel. Vill. of Los Ranchos de Albuquerque v. City of Albuquerque*, 1994-NMSC-126, ¶ 18, 119 N.M. 150, 157, 889 P.2d 185, 192; NMSA 1978, § 3-18-3 ("municipalities "may regulate, restrain and prohibit the running at large of any animal within the boundary of the municipality[.]"); NMSA 1978 §77-1-12 (municipalities "[s]hall make provision by ordinance for the seizure and disposition of dogs and cats running at large and not kept or claimed by any person on the person's premises." ).

"The state's power of eminent domain is separate and distinct from the state's police power." *Yawn v. Dorchester Cty.*, No. 2:17-CV-440-MBS, 2020 WL 1274442, at *3 (D.S.C. Mar. 17, 2020).  The police power refers to the state's "general power of governing." *Nat'l Fed'n of*

---

[1] In her response and complaint, Plaintiff clearly alleges that the feral cats are a public health risk. **Doc. 14 at ¶10, 26.** Plaintiff also attached a number of documents to her complaint describing the detrimental effect of releasing cats on the health and safety of the community.  This fifty-one page attachment focuses mostly on the dangers feral cats pose to humans, such as the spread of diseases including toxoplasmosis and rabies.  **Doc. 14-1 at 3 ¶ 9** ("TNR is exposing me and all of Albuquerque to significant health risks unnecessarily. The science on the detrimental health effects or risks is well documented."); *Id at* **7** ("domestic cats and wild animals… pose a public health and safety hazard to people, property and the environment…. Cats, their feces, allergens, urine, har, regurgitation, carcasses, dead prey animals, associated odors, and ectoparasites such as fleas, ticks, and mites pose serous health threats to humans…. Students can be bitten or scratched by cats, with possible transmission of disease possible.").

6

*Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012). Specifically, such power "extends to all matters affecting the public health or the public morals." *Stone v. Mississippi*, 101 U.S. 814, 818 (1879).

The Tenth Circuit reasoned that "when the state acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a Taking for purposes of the Takings Clause." *Lech v. Jackson*, 791 F. App'x 711, 715 (10th Cir. 2019) (unpublished). "When the state acts to preserve the 'safety of the public,' the state 'is not, and, consistent[ ] with the existence and safety of organized society, cannot be, burdened with the condition that the state must compensate [affected property owners] for pecuniary losses they may sustain' in the process." *Id*. at *5 (quoting *Mugler v. Kansas*, 123 U.S. 623, 669 (1887)); *see also Penn Central,* 438 U.S. at 125, 98 S.Ct. 2646 (noting that laws meant to support the health, safety, morals, and general welfare of the entire community are generally upheld even if they destroy or adversely affect private property interests), *quoted in Ramsey Winch Inc. v. Henry*, 555 F.3d 1199, 1210 (10th Cir. 2009); *Patty v. United States*, 136 Fed. Cl. 211, 214 (2018)("The distinction between an exercise of the police power and a constitutional Taking has been characterized ... as 'whether the governmental action operates to secure a benefit for or to prevent a harm to the public.' "); *Yawn v. Dorchester Cty.*, No. 2:17-CV-440-MBS, 2020 WL 1274442, at *4 (D.S.C. Mar. 17, 2020) ("The loss of Plaintiff's bees was unintentional; it was an unfortunate consequence to a proper exercise of Defendant's police power. Because Defendant was exercising its police power, and not its power of eminent domain, the Takings Clause is not implicated."). The TNR policy is an exercise of the Defendants' police powers to protect the public health, and not an exercise of its eminent domain powers.

Moreover, "[a]s is evident from its plain language, the Takings Clause does not require compensation unless private property—whether personal or real—has been taken, whether

physically or through regulation, for public use." *McCutchen v. United States*, 145 Fed. Cl. 42, 51 (2019), *citing AmeriSource Corp. v. United States*, 525 F.3d 1149, 1152 (Fed. Cir. 2008) ("The clause does not entitle all aggrieved owners to recompense, only those whose property has been 'taken for a public use.' "); *see also Lech v. Jackson*, 791 F. App'x 711, 716 (10th Cir. 2019) (private property damaged or destroyed pursuant to police power is not a taking for public use), *quoting Bachmann v. United States*, 134 Fed. Cl. 694, 696 (Fed. Cl. 2017) (holding that "[w]hen private property is damaged incident to the exercise of the police power, such damage"—even when physical in nature—"is not a taking for the public use, because the property has not been altered or turned over for public benefit" (citing *Nat'l Bd. of Young Men's Christian Ass'ns v. United States*, 395 U.S. 85, 92–93, 89 S.Ct. 1511, 23 L.Ed.2d 117 (1969))).

Here, Defendants do not regulate Plaintiff's property for the benefit of the public. Nor do they regulate Plaintiff's property at all. *See, e.g., Yawn v. Dorchester Cty.*, No. 2:17-CV-440-MBS, 2020 WL 1274442, at *4 (D.S.C. Mar. 17, 2020). Rather, they regulate the population of stray cats and vaccinate them for the public health.

Moreover, the TNR policy is not "functionally equivalent" to a physical taking. *Lech v. Jackson*, 791 F. App'x 711, 715 (10th Cir. 2019), *quoting Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005) (describing regulatory takings as "regulatory actions that are functionally equivalent" to physical takings). The TNR policy does not regulate Plaintiff's property or the use of her property, and the release of feral cats does not constitute government intrusion into her property. Diminution in property value alone does not constitute a taking. *Mountain States Legal Found. v. Hodel,* 799 F.2d 1423, 1430 (10th Cir. 1986) (diminution in property value, standing alone, does not constitute a taking).

Finally, the alleged injury suffered by Plaintiff is incidental to the TNR program, which seeks to regulate the feral cat population and alleviate the health effects of feral cats on the community. "If the injury complained of is only incidental to the legitimate exercise of governmental powers for the public good, then there is no taking of property for the public use, and a right to compensation, on account of such injury, does not attach under the Constitution." *Chicago, B. & Q. Ry. Co. v. People of State of Illinois*, 200 U.S. 561, 593–94 (1906), *quoted in in Yawn v. Dorchester Cty.*, No. 2:17-CV-440-MBS, 2020 WL 1274442, at *4 (D.S.C. Mar. 17, 2020) (insecticide spray that incidentally killed plaintiff's bees was conducted to prevent the spread of disease and protect public health, falling within state's police power, and did not constitute a compensable Taking), *citing Chae Bros., LLC v. Mayor & City Council of Baltimore*, No. CV GLR-17-1657, 2018 WL 1583468, at *8 (D. Md. Mar. 30, 2018)(stating that " 'merely ... incidental or consequential' damage to private property—even when resulting from government action—is, at most, 'compensable as a tort.' ") (quoting *Ridge Line v. United States*, 346 F.3d 1346, 1355–56 (Fed. Cir. 2003)).

Therefore, Plaintiff's Federal Takings Clause and inverse condemnation claims as alleged fail as a matter of law, and the Court need not analyze the *Penn Central* factors.

### C. Penn Central Factors.

Alternatively, even if the Court were to weigh the *Penn Central* factors, the Court concludes that Plaintiff's allegations do not state a plausible *Penn Central* regulatory takings claim. The major factors under the Penn Central inquiry are (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Penn Central,* 438 U.S. at 124, 98 S.Ct. 2646. *Penn Central* focuses on "the magnitude of a regulation's

economic impact and the degree to which it interferes with legitimate property interests." *Lingle,* 544 U.S. at 540, 125 S.Ct. 2074; *quoted in Ramsey Winch Inc. v. Henry*, 555 F.3d 1199, 1209–10 (10th Cir. 2009).

Plaintiff alleges her property suffered diminution in value. In support of this conclusion, she cites to one instance in which she told a potential buyer about the cats. The interested party backed out because he did not want to live near cats. This is not sufficient to raise a plausible claim that government actions resulted in a reduction in value of her property. Moreover, the character of the government regulation heavily outweighs any reduction in value. The TNR program does not regulate Plaintiff's property. Rather, it is a public health measure aimed at reducing the population of stray cats and reducing the spread of diseases. *See Appolo Fuels, Inc. v. United States*, 381 F.3d 1338, 1351 (Fed. Cir. 2004) (considering "government action designed to protect health and safety" within the character prong of *Penn Central*, which outweighed severe economic injury). Therefore, the Court concludes that Plaintiff does not allege a plausible *Penn Central* regulatory takings claim, as the character of the regulation outweighs any economic impact, even if severe.

## II.     Individual Defendants are entitled to qualified immunity.

### A.     Qualified Immunity Standard.

Defendants Keller and Nevarez have asserted the defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Romero v. Story*, 672 F.3d 880 (10th Cir. 2012).

When a defendant moves for dismissal on the basis of qualified immunity, the plaintiff bears a heavy two-fold burden. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must put forward evidence showing (1) that the defendant violated plaintiff's constitutional rights, and (2) the right at issue was clearly established at the time of the violation. *Id*. If the plaintiff fails to establish either part of the two-part inquiry, the court must grant the defendant qualified immunity. *Id.; Leverington v. City of Colorado Springs,* 643 F.3d 719, 732 (10th Cir.2011) ("In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct.)" *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

### B. **Plaintiff failed to sufficiently plead personal involvement of Defendants in constitutional violation.**

Defendants argue that Plaintiff failed to sufficiently plead (1) the individual Defendants' personal involvement in the alleged constitutional violation, (2) causation, and (3) damages. The Court agrees and adopts Defendants' reasoning, concluding that Plaintiff failed to adequately plead the personal involvement of the individual Defendants in the alleged takings violation.

Plaintiffs do not allege that the individual Defendants were personally involved in releasing stray cats on or near their property. Rather, they argue they are ultimately responsible for the continuation of a policy instituted under the prior mayor.

It is "particularly important" that "the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Kansas Penn,* 656 F.3d at 1215 (quoting *Robbins v. Okla. Ex rel. Dep't of Human Servs.,* 519 F.3d 1242, 1250 (10th

11


Cir.2008)). "Section 1983 does not authorize liability under a theory of respondeat superior." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) Instead, to establish supervisory liability, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds,* 614 F.3d at 1199.

Plaintiff failed to plausibly allege a causal connection between the individual Defendants' actions and the damages. Plaintiff pled and admitted that the City's policy was to catch and release stray cats back into the community. Plaintiff failed to plausibly allege a causal connection between the policy and an increase of stray cats on Plaintiff's property. Rather, the TNR policy would logically result in a decrease of feral cats. To the extent Plaintiff argues that Defendants should have captured and destroyed the feral cats, the failure to do so does not constitute a Takings claim.

Moreover, she failed to plausibly allege that she carries a greater burden than other Albuquerque residents– *i.e*., that the city was dumping in her neighborhood more than her fair share of cats. *Penn Cent.,* 438 U.S. at 123, 98 S.Ct. 2646 (Takings clause prevents "Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."). Finally, Plaintiff failed to plausibly allege that there were damages.

    **C.**     **Constitutional Violation was Not Clearly Established**.

Alternatively, the Court concludes that Plaintiff failed to satisfy her burden on the clearly established prong of qualified immunity. Here, the individual Defendants asserted qualified immunity and specifically the clearly established prong. Therefore, Plaintiff bears the burden of citing to case law and articulating the clearly established right they claim had been violated. *See*

*Thomas v. Durastanti,* 607 F.3d 655, 669 (10th Cir. 2010); *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007) ("[T]he record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." (internal quotation marks omitted)). In analyzing clearly established law, the Court looks at the cases cited by Plaintiff to determine whether those cases can serve as clearly established law. *See, e.g., A.M. v. Holmes*, 830 F.3d 1123, 1154 (10th Cir. 2016) (granting qualified immunity where "neither of Plaintiff's cited sources can serve as the clearly established law governing this First Amendment retaliation claim.").

"The law is clearly established if there is a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, that has found the law to be as the plaintiff maintains." *Gadd v. Campbell*, 2017 WL 4857429, at *4 (10th Cir. 2017). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, ⸺ U.S. ⸺, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks omitted). "Clearly established law should not be defined at a high level of generality." *White v. Pauly*, ⸺ U.S. ⸺, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (internal quotation marks omitted). Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.*

Plaintiff did not cite to any case law aside from general Takings principles and *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2168, 204 L. Ed. 2d 558 (2019). *Knick* concerns whether a plaintiff must exhaust state court remedies before pursuing a §1983 action in state court and does not appear to be relevant to this case. Moreover, Plaintiff has not cited to any case holding that release of feral animals constitutes a takings claim, and the Court could find none. Therefore, the Court cannot say that a reasonable government official would know that operating a program

to catch, neuter and vaccinate, then release, feral cats would constitute a violation of Plaintiff's rights under the Takings Clause.

The Court concludes that Plaintiff failed to carry her burden of citing to clearly established law, and the Court finds that the individual Defendants are entitled to qualified immunity. *See Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) (plaintiff failed burden under qualified immunity by failing to cite to any Supreme Court or Tenth Circuit opinion that would indicate right was clearly established); citing *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."); *Gutierrez v. Cobos*, 841 F.3d 895, 906-907 (10th Cir. 2016) (plaintiff failed to meet burden where they did not cite to legal authority for clearly established law).

### III. Court *sua sponte* declines to exercise supplemental jurisdiction over remaining state law claims.

Having dismissed the Federal takings claim, only state-law claims remain, including a (1) New Mexico Takings claim; (2) state law trespass claim; and (3) state law nuisance claim. This Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Court "may decline to exercise supplemental jurisdiction over a claim" under § 1367(a) if the Court "has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). The Court has discretion to decide *sua sponte* whether to exercise supplemental jurisdiction over remaining state law claims.

*See Ames v. Miller*, 247 Fed. Appx. 131, 133-35 (10th Cir. 2007) (unpublished) (affirming court's sua sponte decisions to dismiss and to decline supplemental jurisdiction over state law claims).

In dismissing state law claims for lack of supplemental jurisdiction, the Court weighs the following factors: judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). In the usual case, this will point toward dismissal. *Id.*

Here, fairness and comity overwhelmingly weigh towards declining supplemental jurisdiction. Plaintiff asserts novel state-law issues, and the State of New Mexico and the state courts have a strong interest in shaping that law. Where federal claims are not implicated, a federal district court should avoid second-guessing a municipality's decision in how it exercises its public health and police powers. Moreover, this case is in its early stages. It was filed November 27, 2019, and discovery and scheduling are stayed. Therefore, judicial economy and convenience are not served by exercising supplemental jurisdiction. Moreover, the statute of limitations has been tolled. *See* 28 U.S.C. § 1367(d); *Varnell v. Dora Consol. Sch. Dist.,* 756 F.3d 1208, 1217 (10th Cir. 2014). The Court will therefore dismiss the state law claims without prejudice to asserting them in state court.

**IV.     Plaintiff's Fed. R. Civ. P. 56(d) affidavit.**

Plaintiff attached a Rule 56(d) affidavit to his response to the motion to dismiss. Initially, the Court notes that such affidavit is not applicable to a Fed. R. Civ. P. 12(b)(6) motion. Moreover, because the Court takes *well-pled* allegations as true, the affidavit is unnecessary in response to a Fed. R. Civ. P. 12(b)(6).

Plaintiff argues that she was not able to get discovery relating to how involved the individual Defendants were in the TNR policy. "Unless [a] plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to a

dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis added); see also *Workman v. Jordan*, 958 F.2d 332, 336 ("If the [defendant's] actions are those that a reasonable person could have believed were lawful, defendants are entitled to dismissal before discovery."). Even assuming the individual Defendants were personally involved in the constitutional violation, Plaintiff's claims fail on the clearly established prong of qualified immunity.

Finally, the Court dismissed the Takings claim on alternate grounds unrelated to whether the individual Defendants were personally involved in the alleged constitutional violation, therefore discovery is unnecessary.

## CONCLUSION

For the reasons stated above, the federal claims against the Defendants are dismissed with prejudice, and the state law claims are dismissed without prejudice to reasserting them in state court.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (**Doc. 17**) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Stay Proceedings (**Doc. 19)** is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the Federal Takings claim and inverse condemnation claim (Count I) against the Defendants is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over the remaining state law claims (Count I and II). These state law claims are therefore **DISMISSED WITHOUT PREJUDICE.** Plaintiff may reassert these state law claims in state court.

A separate judgment will be issued.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE